# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>Mary Rivers and Donald Rivers,<br><br>    *Debtors* | Chapter 7<br>Case No. 13-21187 |
| LAO Properties, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>Mary Rivers and Donald Rivers,<br><br>    *Defendants* | Adversary Proceeding<br>Adversary Case No. 14-02009 |

## AFFIDAVIT OF HAROLD ANDERSON

Harold Anderson, first being duly sworn, deposes and says as follows:

1. My name is Harold Anderson. Pursuant to a certain Master Agreement for Pledge and Assignment of Membership Interests and Amendment to Operating Agreement dated October 15, 2012, a true copy of which is attached as *Exhibit A*, I am the sole manager of LAO Properties, LLC, the Plaintiff in the above-captioned matter ("LAO"). The facts set forth in this Affidavit are based on my personal knowledge.

2. LAO operates a hospitality business and owns (or did own until recently) various seasonal rental properties in York Beach, Maine. The locations of these rental properties are as follows:

    a.    31 Ocean Avenue Extension (residential) (sold in 2013)
    b.    67 Ocean Avenue Extension (residential)
    c.    80 Ocean Avenue Extension (residential) (sold in 2013)

    d.  83 Ocean Avenue Extension (residential)
    e.  3 Ravine Avenue (residential)
    f.  48 Broadway (residential)
    g.  9 Kendall Road (residential)
    h.  2 Beach Street, Units 2, 3 & 5 (commercial)

3.  On November 1, 2011, while LAO was under different management, LAO filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Court. After the United States Bankruptcy Court entered its Order confirming LAO's plan of reorganization, LAO obtained a Final Decree on December 28, 2012.

4.  In or around January 2012, LAO and Mary Rivers d/b/a Rivers by the Sea entered into a Rental & Property Management Agreement (the "Agreement"), whereby she agreed to rent out and manage the rental properties owned by LAO. A true copy of the Agreement is attached hereto as *Exhibit B*.

5.  The United States Bankruptcy Court authorized the Agreement by Order dated January 5, 2012, a true copy of which is attached hereto as *Exhibit C*.

6.  Sections 3.8, 3.9, and 4.1 of the Agreement require Mary Rivers to deposit all gross rental amounts into LAO's debtor-in-possession bank accounts within one (1) business day of receipt, deducting only state lodging taxes prior to remission.

7.  Section 3.3 of the Agreement requires Mary Rivers to provide copies of rental agreements to LAO upon request.

8.  Section 3.10 of the Agreement requires Mary Rivers to maintain detailed records relating to services rendered and income collected and to provide copies of such records to LAO upon request.

9.  As reflected in the Bankruptcy Court's records, the U.S. Trustee consented to the terms of the Agreement but had conditioned its approval on the requirements that (a) Rivers by

the Sea remit the gross amount of rental payments, minus only state lodging taxes, to LAO within one business day of receipt; (b) that Rivers by the Sea provide monthly statements for the bank account for the rental payments to the U.S. Trustee on a monthly basis; and (c) that Rivers by the Sea fully perform its obligations under the Agreement.

10. Although the Agreement was with Mary Rivers, my primary contact in dealing with Rivers by the Sea has been Mary's husband, Donald Rivers, and it has always been my understanding, based on numerous contacts with Rivers by the Sea and the Riverses, that Donald Rivers was at all times very much involved in running the business, including the procurement of tenants and collection of rents.

11. Rivers by the Sea did obtain rental agreements for LAO's properties and collected rents pursuant to the Agreement in 2013. Nevertheless, in violation of the Agreement, it has failed and refused to remit most of the rental income to LAO.

12. I have repeatedly asked the Riverses to remit the rental income to LAO. Copies of some of my e-mail correspondence requesting payment are attached hereto as *Exhibit D*. The Riverses have never denied their obligation to remit the rents, yet they have not done so.

13. I have repeatedly asked the Riverses for an accounting of the rents, but again they have failed to comply. The only documents I have been receiving since 2012 are weekly ledgers of the rents relating to the LAO properties, received from the Riverses' agent, Cynthia Jordan. A copy of the most recent ledger sheets is attached hereto as *Exhibit E*. According to the ledger sheets generated by Rivers by the Sea, the amounts owed to LAO for the 2013 summer season as of September 10, 2013 totaled Eighty Thousand Five Hundred Forty-Three Dollars and Ninety-Eight Cents ($80,543.98). This amount is exclusive of commissions and other charges, which Defendants purported to deduct, in violation of the Agreement.

14. In addition, according to Defendants' accounting for the period October 25, 2012 through December 31, 2012, a copy of which is attached hereto as *Exhibit F*, they owe Eleven Thousand Two Hundred Twenty-Eight Dollars and Twenty-Five Cents ($11,228.25) for that time period. Again, this is exclusive of commissions and other charges that Defendants deducted in violation of the Agreement. (Defendants originally made an improper deduction for mortgage payments in October 2012, as reflected in *Exhibit F*. LAO made those mortgage payments itself, so Defendants had no basis for claiming a deduction. As corrected, *Exhibit F* shows a net liability to LAO of Eleven Thousand Two Hundred Twenty-Eight Dollars and Twenty-Five Cents ($11,228.25).)

15. I believe that the amounts actually collected from tenants and due to LAO are considerably higher than what is shown on *Exhibits E and F*. I have talked to a number of the tenants, who have told me that they paid substantially more to Rivers by the Sea than what Rivers by the Sea reported. Under the Agreement, the only amount that need not be directly remitted to LAO were lodging taxes, but the discrepancies are much larger than what the lodging taxes would have been.

16. I have asked the Riverses to explain the discrepancies between the rental income reported by Rivers by the Sea and the rental payments reported by the tenants themselves. Some of these requests are reflected in the e-mails attached hereto as *Exhibit G*. The Riverses have failed to explain the discrepancies.

17. The rental agreements would clarify the amounts that the tenants were obligated to pay. I have repeatedly asked the Riverses for copies of the leases. Some of these requests are reflected in the e-mails attached hereto as *Exhibit G-1*. However, the Riverses have refused to produce the leases, in violation of the Agreement.

18.     I recently obtained from sources other than Defendants, two rental agreements prepared by Rivers by the Sea for LAO properties: one with Will Curran, a copy of which is attached hereto as _Exhibit H_, and one with Virginia Hmielowski, a copy of which is attached hereto as _Exhibit I_.  The Agreement with Curran reflects a "service fee" of Four Hundred Sixty-Seven Dollars and Fifty Cents ($467.50), and the Agreement with Hmielowski reflects a service fee of Three Hundred Forty Dollars ($340.00).  Such service fees are not authorized by the Agreement, and I never otherwise agreed to them.  On information and belief, Rivers by the Sea charged and collected similar service fees from the remaining tenants of LAO properties.  These service fees are not disclosed in the ledger sheets prepared by Rivers by the Sea.  These additional amounts collected by Rivers by the Sea are in essence disguised rents and are also owed to LAO.

19.     I have to question whether the Riverses have even remitted the lodging taxes to the State.  I could not ascertain that LAO was assigned a resale number by the State.  Maine Revenue Services has placed tax liens on the property of Mary Rivers on or about March 6, 2012 and October 25, 2012 for failure to pay sales taxes.  These liens, in the total amounts of Twenty Thousand Nine Hundred Eighty-Five Dollars and Forty-Seven Cents ($20,985.47) and Seven Thousand Six Hundred Fifteen Dollars and Thirty-Seven Cents ($7,615.37) respectively, are recorded in the York County Registry of Deeds at Book 16275, Page 595 and Book 16446, Page 78, copies of which are attached hereto as _Exhibit J_.  The said Registry does not reflect any discharges of these liens.

20.     I have asked the Riverses for copies of their records relating to the LAO properties.  In violation of the Agreement, they have failed to provide such records.

21.     As a result of the foregoing, the Riverses are in breach of the Agreement, and they currently owe LAO no less than Ninety-One Thousand Seven Hundred Seventy-Two

Dollars and Twenty-Three Cents ($91, 772.23) even based on their own underreporting of rental payments received.  Once the improperly deducted commissions and other charges are factored back into the computations, the amount increases to One Hundred Sixty-Four Thousand Two Hundred Seventy Dollars and Twenty-Three Cents ($164,270.23).  Further, based on Exhibits H and I, I conclude that Defendants underreported the amount of rent actually received by 8.5 percent.  Making this adjustment, the total amount owed by Defendants, exclusive of interest and costs, is One Hundred Seventy-Eight Thousand Two Hundred Thirty-Three Dollars and Nineteen Cents ($178,233.19).

Dated:  April 25, 2014                         /s/ Harold Anderson
                                            Harold Anderson

STATE OF MAINE                           April 25, 2014
CUMBERLAND, ss.

Personally appeared before me the above named Harold Anderson in his capacity as manager of LAO Properties, LLC and made oath that the foregoing Affidavit is based on his knowledge and is true.

                                                  Before me,

                                                  /s/ Karen Belton
                                            Notary Public, State of Maine
                                            Print name:   Karen Belton
                                            My commission expires:      8/26/2020